Wm. Marshall and Mary Marshall in their own right and as Trustees and Executors under Aaron Marshall's Will,

*vs.*

Eliza P. Rench, Samuel D. R. Marshall, Edw. P. Jones and Emily J., his wife, Thos. J. Marshall, Aaron M. Marshall and John P. Marshall.

*Sussex, Sept. T. 1868.*

A testator, after providing for the payment of his debts and funeral charges, directed that his whole estate, real and personal, should be divided equally among eight of his children, excluding one son, each child to be charged, in the division, with any advances in money which he or she had received in his or her lifetime; the division and apportionment to each child to be made by five judicious and impartial freeholders of the county, appointed by the Chancellor of the State, according to law. It was also provided that if such division should be found to give each child, included, more than $4,000, the excess should be divided into nine equal parts, of which the eight children before named should each take one, in the manner before directed, and the remaining one-ninth of the excess was devised to trustees, in trust, for the son excluded in the original distribution. Subsequently to the date of the will, the testator executed conveyances to several of his children, of seven out of twenty-five parcels of real estate of which he was seized at the date of the will; *Held*, that the parcels so conveyed could not be considered in the partition, and that the conveyances operated neither as an advancement, a satisfaction, or implied revocation, of the devise, nor as a trust implied from the admitted intention of the testator to effect an equal division of the property among the eight children.

The doctrine of advancement applies only, under the law of this State, to cases of intestacy, and never to lands devised.

A conveyance of lands to one, to whom, by will executed prior thereto, the same lands had been devised, would operate as a satisfaction of the devise, precisely as the settlement of a portion on a legatee, is an ademption of the legacy, otherwise, when the conveyance is not of the same lands which were devised.

Conveyance to a devisee of lands other than those devised, or any interest in lands, different from that devised, has never been held an imp'ied revocation of a will. Such revocations arise only out of certain alterations of the estate devised, which are incompatible with the operation of the devise or out of such a complete change in the relations of the testator as impose a new obligation, and necessarily implies a change of testamentary purpose, such as marriage and the birth of issue after the will.

The effect to be given to any instrument, a will, conveyance, or agreement of any kind, must be such, and only such, as arises from its terms, or from its legal operation on its face, whenever the instrument embodies all the terms and provisions which were intended to be imbodied, and those terms and provisions have, on their face, a clear meaning.

Where a testator provides for the partition or division of his estate among certain of his children to be made " by five judicious and impartial free- " holders of the county aforesaid, appointed by the Chancellor of the said " State, according to law," the Court of Chancery has jurisdiction by bill for parti on, and not by petition under the Statute.

Trustees are not obliged to sacrifice their own right as individuals because of their relation, as trustees, to other parties interested in the subject-matter of the estate; and to submit a question as to the operation of deeds affecting the interest of the *cestui que trust*, to the decree of the Court, is the legitimate mode of ascertaining what the rights of the parties are, and is not a breach of their duty as trustees.


BILL IN EQUITY FOR PARTITION OF LANDS UNDER A DEVISE.—Aaron Marshall, by his will, dated July 13th, 1855, after providing for the payment of his debts and funeral charges, directed that his whole estate, real and personal, should be divided equally among eight of his children, excluding his son John P. Marshall, each child to be charged in the division with any advances in money, which he or she had received from the testator in his lifetime. The division of the estate of the testator is di-

rected to be made "by five judicious and impartial "freeholders, of the county aforesaid, appointed by the "Chancellor of the said State according to law, who "shall," the will provides, "after making the division "aforesaid, and making due allowance for the sums to be "deducted from the share or portion of each of said "children as are hereafter mentioned, lay off and assign to "each by metes and bounds, or in such manner as they "may deem best for the interests of each, his or her share, "to be held in the manner and form hereinafter provided.'

Then the testator proceeds by direct devises to give to his children the shares which shall, by the freeholders, be allotted to them respectively, to some of them directly, in fee simple, and for others of the children their shares are settled in trust, at the same time specifying in the case of each child, the amount of the advance, if any, to be charged against his or her share. It is further provided that, if it should be found that a division of the estate into eight parts would give to each of the eight children named more than $4,000 in value, the excess shall be divided into nine equal parts, each of the said eight children taking one of them, in the same manner as before directed, with respect to the original shares, and the remaining one-ninth of the excess is devised to the trustees, in trust for John P. Marshall, the son excluded in the original division. There is also a provision that upon the decease of any one of the eight first named children, without child or children, the share of the one so dying, should be equally divided among all the surviving children of the testator. These are all the material provisions of the will.

At the date of the will, the testator was seized of twenty-five (25) parcels of real estate, which are described in the bill, and numbered from 1 to 25. After the making of his will, at sundry dates, he executed conveyances of portions of his real estate, being Nos. 19 to 25, inclusive, to

several of his children. In these conveyances his wife did not join him.

The testator died in February, 1865, seized of the parcels numbered from 1 to 18, inclusive, leaving his will in full force and without any codicil. One of the daughters, Hannah M. Marshall, died, unmarried and without issue, in the year 1860, after the date of the will, but before the death of the testator.

Since the death of the testator, under proceedings in the Orphans' Court, dower has been assigned to his widow, Elizabeth M. Marshall, (with whom he inter-married after the making of his will.) out of the real estate, Nos. 1 to 18, held at his death. The bill describes the part assigned for dower and the residue. The estate of the testator has been settled, and there remains an unappropriated balance of $2035.18⅔, subject to the directions of the will for division of the estate.

It is alleged in the bill that the conveyances by the testator to the defendants, after the making of his will, "were intended by him as, and by way of, an advance- "ment towards the distributive shares of the said Thomas "J. Marshall, Eliza P. Rench, Emily Jane Jones, wife of "said Edward P. Jones, and the said Aaron M. Marshall, "respectively, the value of which said tracts and parcels "of land should be ascertained by the said freeholders, "&c., so as to effectuate the intention of the said "Aaron Marshall, deceased, as exhibited in his said last "will and testament, of constituting and making his "said children the recipient of his bounty, as in said last "will and testament specified,"

The object of the bill is to obtain a partition of the whole estate, subject to the provisions of the will, claiming that in such partition the defendant be charged with the value of the lands conveyed to them, respectively.

.    To  this  bill  two  of  the  defendants,  Mrs.  Renćh  and Samuel  D. B.  Marshall, answer, admitting  all the allega- tions  of the bill.    The  other  defendants demur, assigning various  causes  of demurrer, all  which resolve  themselves into four objections.    These are :

1.  To the jurisdiction.

2.  To the frame of the bill.

.    3.  To  the  right  of the  complainants, being  trustees under  some  of  the  deeds,  to  allege  that  they  were  made by way of advancement.

4.  To the  claim made  by the bill to have the  lands conveyed, treated as advancements.

At  the September  term,  1868, the  cause came on and was heard on the Demurrers.*

*Moore*,  *J. H. Paynter*  and  *Wright*,  for  the  demur- rants.

There  are  some  material  facts to be  borne  in  mind. The  will  stood  some  ten  years, from  1855  to  1865.    The deeds bear  different dates, one, at  least, being  two years prior  to  the  testator's  death.    The  tract  conveyed  to Dr.  William  Marshall  upon  a  consideration  stated  as

---

* The argument was in the following order :    Mr. *Paynter* opened for the demurrants, and was followed by Judge *Layton* for the complainants, then Mr. *Wright* argued for the demurrants, and was, in turn, followed by Mr. *Robinson*, representing two of the defendants in the same interest as the complainants, and Mr. *Cullen* for the complainants; Mr. *Moore* for the demurrants closed the argument.    The arguments of the three counsel for the demurrants being upon the same general grounds, are, as is usual and necessary, reported together, but the arguments of counsel on the other side, each proceeded upon a different view of the case, and it was found necessary, to a fair presentation of them, to report them separately.

$500, it is not sought to bring in. The interests under the will and the deeds differ as to two.

To Mrs. Rench—and Mrs Jones, both are in trust.

To Aaron M. Marshall and Thos. Marshall, the will gives absolutely ; the deeds convey in trust only.

1. The first ground of demurrer is to the claim that the conveyances should be treated as advancements.

The doctrine of advancements applies only to intestate estates. *Rev. Code*, (1852,) 279. In this our statute is similar to the English statute. 4 *Kent Com.* (419) *note c.* ; 3 *Sandf. Ch.* 120 ; *Walton vs. Walton*, 14 *Ves.* 318 ; *Hawley vs. James* 5 *Paige*, 450 ; *Vachell vs. Jeffereys, Prec. in Ch.* 170 ; 1 *Bouvier's Law. Dict.* 76 ; *Arthur vs. Arthur*, 10 *Barb.* 9.

The doctrine proceeds upon the natural presumption, in the absence of a will, that the conveyance is a gift in anticipation of the parent's death, and that he intended equality ; but a subsequent disposal by will rebuts the presumption. A will leaves nothing open to presumption, it is an express disposal, and, whatever it may be, it must take effect, even though it works an inequality, because the testator is master of his property.

This will expressly excludes the idea of future advancements of real estate. It devises only the real estate of which he shall die seized, &c. All advancements contemplated are specified, which are of money, and this excludes the idea of advancements of real estate.

The second item specifies, all property "of which I "shall die seized ;" the personal estate is made first subject to the advances, which are described as heretofore made, and therefore cannot apply to any made after, and all the expressions apply to personalty, such as "sums," balances, none to realty.

There is also other evidence of intent appearing otherwise than by the will. The provisions of the deeds vary materially from those of the will, and cannot, therefore, be taken to be made in part execution of the will. Compare the devise for Emily and the deed to Jones; the devise is to Emily only for life, with remainder to her children, the deed to Jones and wife, jointly, with the remainder to the children of both by name. So, to Thomas, the will devises in fee simple, and the deed conveys in trust.

The testator must be presumed to have understood the terms used, and to have intended what he expressed by them. Besides ,the deeds were drawn by counsel.

The conveyances are alleged to be by bargain and sale. These imply consideration, and the fact of consideration cannot be impeached. We must assume that they were sales and not gifts. The claim of advancement is, therefore, contrary to the effect of both will and deed.

The adoption of the idea of advancements would work unjustly. Improvements may have been put on which the estimate of value cannot justly include; yet it is impracticable to estimate its value ten years ago. The same reasoning applies to dower.

Again, there is nothing to connect the conveyances with the will, and parol evidence is insufficient to connect a will with any other paper, without some reference in the papers. *Broom's Leg. Max.* (525).

Any assumed presumption of intended advancement is clearly rebutted, both by the failure of the will to provide for it, and by the fact that the will was left to stand after the deeds, without a codicil. But proof of such intention would be ineffectual, because the effect of a written instrument cannot be contradicted, impaired or altered, by parol evidence of intention, or by an intention unexecuted.

The doctrine of advancement is never applicable to a devise of a residue, which this is, in substance, nor to a devise of realty. *Arthur vs. Arthur*, 10 *Barb. S. C.* 18.

The effort to apply the doctrine of ademption by way of analogy to this case must fail.

(1.) This doctrine is applicable only to personalty. 2 *Sto. Eq. Jur. Sec.* 1115. An ademption is an advancement of a personal bequest, allowed as to personalty but not as to realty, because gifts of the latter are of a more formal and solemn character.

(2.) But even if it were applicable to realty at all, it never is to a residue; even as to money, this objection would operate. 2 *Sto. Eq. Jur. Sec.* 1115; *Arthur vs. Arthur,* 10 *Barb. S. C.* 18.

2. Another ground of demurrer is that a bill for partition will not lie. The will itself provides its own mode of partition, which must be followed by application simply for the appointment of freeholders. This is all the power the Court has on the subject.

As to the power of the Chancellor for partition, the Court must ascertain shares, not the Commissioners, 1 *Sm. Ch. Pr.* 478, but this the testator has done, and even directed the mode of proceeding. Nothing is left but for the Chancellor to make the appointment. The Court cannot decree partition, for this is in effect done by the will, therefore there can be no subpoena upon us to shew cause.

Partition in equity rests upon conveyances, 1 *Sto. Eq. Jur. Secs.* 652–2; 1 *Madd. Ch. Pr.* (245). Therefore, when parties are not competent to convey, the partition cannot be made. 2 *Ves.* 129; 1 *Sm. Ch. Pr.* 477.

3. A third objection is that the complainants are trustees for some of the defendants. They cannot be allowed to proceed adversely against their *cestuis que trust,* and that for their own benefit. 2 *Sto. Eq. Jur. Sec.* 1275. It is the duty of trustees to maintain the title of their *cestuis que trust. Tiffany and Bullard on Trusts,* 815. The present position of these trustees is not consistent with their trusts.

4. The bill is informal as a bill for partition. It should pray the appointment of commissioners. *Equity Draftsman*, 298. Besides, there is no prayer for relief, only for a subpœna, and there is no prayer to instruct commissioners as to advancements. 1 *Dan. Ch. Pr.* 448, *note 2.*

Upon these grounds we claim that the bill should be dismissed, and no proceeding entertained, except for the appointment of commissioners under the will.

*Layton*, for the complainants.

The answer of two *cestuis que trust* admits the purpose of advancement, and we contend that the deeds must be so treated. The will cannot be executed according to its intent without considering these lands in the division, for the intent of the will was that each devisee take one-eighth *of the whole as then held*, not an eighth of a part of it.

As to the objections to the form of the bill we cite *Mitf. Eq., Pl.* 73, and as to the jurisdiction of the Court in partition, 1 *Madd.*, 243.

*Robinson*, for the two defendants who answered, their interests being identical with those of the complainants.

"Advancement" is not the proper term ; these depend upon statute, and are, by the statute, confined to cases of intestacy. This is not really a case of advancement, but one of ademption. It is not a residuary devise, nor a devise at all, but a bequest of $4000. with direction as to the mode of ascertaining it. But there may be ademption even of a residuary devise. We claim an ademption or satisfaction *pro tanto, i. c.*, the lands are to be taken at their value as satisfaction *pro tanto* of their shares of the whole, as contemplated by the will. As to the connec-

tion of the will and the deeds, there is no necessity of parol testimony to connect them. Our averment to that effect, as to the testator's intention, is admitted by the demurrer, and must be taken as a fact.

The doctrine of ademption, or satisfaction, is applicable to real estate. 2 *Sto. Eq. Jur.*, Sec. 1111 ; 1 *Roper on Leg.*, 257. The case of *Arthur vs. Arthur*, cited from 10 *Barbour* 17, agrees with our statement as to legacies, and on page 19 treats of it as to real estate. It is true that 2 *Sto. Eq., Jur.*, Sec. 1115, states the exceptions to the doctrine of ademption, and among them the case of residue ; but the later edition of that work refers to *Thynne vs. Earl of Glengall*, 2 *Ho. of Lds. Cases* 131, to the contrary, that case holding that a devise of residue may be a satisfaction of a portion.

*Cullen*, for the complainants.

1. It is urged that the Court has not jurisdiction by bill, but that the proceedings should be under the direction of the will. The Court has a general jurisdiction for partition, concurrently ‸with the courts of law. The statutory provisions for a more convenient proceeding, does not exclude the general jurisdiction. *Barton's suit in Eq.* 97. The statute is inapplicable to such a case, and, from necessity, the general jurisdiction must be invoked. The direction of the will does not exclude, but recognizes and invokes, the jurisdiction of Chancery. It is not as though the testator had authorized some private person to appoint commissioners, the direction is "appointed by "the Chancellor according to law."

2. We do not contend that the conveyances were in full of the shares under the will. The question concerns the intention of those conveyances ; according to such intention they must be taken.

What are the evidences of intention, that they were to be taken as part of the shares ?

(1.) The trustees, the parties to three, so state, and the statement is admitted by the demurrer.

(2.) Another grantee by her answer, so admits.

Suppose a devise of lands equally between two sons ; afterwards the father conveys to one, his share in severalty, under an agreement that he would accept it in satisfaction, and not under the will,—cannot such an agreement be enforced ? and does it matter whether it be an agreement express or implied ?

THE CHANCELLOR :—

The first question for our consideration is, the demurrer to the jurisdiction of the Court. The objection is, that the partition cannot be made as under the statute, because the statute is inapplicable ; that neither does a bill lie for partition under the general jurisdiction of the Court, because the testator has, himself, provided a mode of partition which excludes that jurisdiction, and that the only proceeding is by petition to the Chancellor for the appointment of five freeholders ; that upon such petition the Chancellor will appoint the five freeholders, in whom will then vest the whole authority to deal with the estate for the purpose of partition, and to determine all questions involved without any decree, order, or instruction of the Court.   Such is the theory of the defendants.

It is quite certain that this case is not within the Statute for partition between joint tenants and tenants in common.   For the shares of the tenants in common are not ascertained, nor are ascertainable, through any powers conferred on the Court by the Statute.   But the shares may be ascertained and the partition made by the Court in the exercise of its general jurisdiction, for under its general jurisdiction for partition, the Court may exercise any power necessary to ascertain the rights of parties, and to effect a partition according to their rights.   I am

32

not able to foresee, that, in order to give full effect to this testator's will, any orders or proceedings will be required which are not within the jurisdiction of this Court upon a bill. Its powers, under this head of jurisdiction, are by no means stinted. 2 *Sto. Eq. Jur. Sec.* 656. So would stand the case before us were it not for the direction in the will for the appointment of freeholders to make the division, which is supposed to exclude the general jurisdiction of the Court. But by this provision I do not understand the testator as meaning to withdraw his estate from such jurisdiction of the Court, for partition, but rather to invoke it. It is not a mere nomination of freeholders by the incumbent for the time being of the office of Chancellor, that the provision directs, but it is evidently an appointment by the Court, acting judicially and by such proceeding as might be appropriate to the subject-matter, that the testator contemplated. Hence, his expression "to be appointed by the Chancellor *according to law.*" The Court will then entertain a bill for partition among the devisees under this will, and will deal with the case, in all respects, according to the course of its general jurisdiction for partition.

The second cause of demurrer is to the frame of the bill. This bill is very inartificial, the consequence, no doubt, of its being originally drafted as a petition for partition, under the Statute, and then only partially modified with a view to its answering as a bill. Some of the parts of a bill it contains, such as the address, the names and description of the complainants, and a statement of the facts, answering to a stating part of a bill. It omits the charge of confederacy and the jurisdiction clause, but these are wholly unnecessary, and were so before the adoption of the new rules. 1 *Sto. Eq. Pl. secs.* 29, 34. It also does not contain the charging part of a bill which alleges pretences with counter allegations by way of answer to the supposed defense, but this is not a necessary part of a bill, and should be used only

when it is requisite in order to enable the complainant to introduce, and put in issue, an answer to some anticipated matter of defense. There are also no interrogatories, but the use of these has always been, discretionary. It is said that in the original forms of bills, special interrogatories were not used. 1. *Sto. Eq. Pl. sec.* 38. The bill is, however, defective in several respects. (1.) It is not correct in its statement as to what real estate is to be divided, and what are the shares of the devisees. The partition must include the whole estate of which the testator died seized, as well the reversion in the parts assigned to the widow for dower, as the residue. We cannot deal with the residue alone now, and await the widow's death before dividing the parts assigned to her; for the shares of the parties entitled are to be ascertained now, by the result of a division of the whole, whether that would give to each devisee less or more than $4,000 in value. Again, the bill is in error in stating that the partition is to be made originally into seven parts instead of eight, in consequence of the death of Hannah M. Marshall. By her death before the testator, the original eighth part devised to her, lapsed; there is no provision under the will under which it can pass; it cannot pass to the other seven original devisees under the devises made to them; for these devises are expressly of one-eighth part, and can pass no more. The provision for survivorship upon the death of either of the eight devisees without issue, must be taken to apply to a death occurring *after* and not before the decease of the testator; but if we suppose Hannah's share to pass under this clause, then it goes to all the eight surviving brothers and sisters, John P. Marshall included, which would not give the surviving seven original devisees a seventh instead of an eighth, but an eighth with an eighth of one-eighth. But, in point of fact, Hannah's share is intestate, and in the partition, whatever she would take if living must be allotted to all the surviving children of the testator to hold together as his heirs at law, the surviving

children to take by devise precisely as if she were living, *i. e.* one eighth, or, if this shall amount to more than $4,000, one-ninth and an eighth of the excess. (2.) A second defect in the bill in the absence of any formal *prayer for relief*, which, in this case, would be a prayer for partition among the parties entitled, according to their shares and interests as previously set forth. (3.) There are prayers for subpœna and answer, but they are too informal. It will be necessary to remodel the whole of the latter part of the bill, including the statement of the interests of the parties and the prayer for answer, relief and subpœna.

Another cause of demurrer to be next considered is to the right of the complainants being themselves trustees, under some of the deeds, to claim to have the deeds treated as advancements. The assertion of such a claim, being contrary to the interests of their *cestui que trusts*, it is complained of as a breach of trust. But the complainants are themselves devisees in their own right. Their own right as individuals, whatever they may be, they are not obliged to sacrifice because of their relation as trustees to some of the devisees. To submit the question whether the deeds operate as an advancement to the decree of the Court, is the legitimate mode of ascertaining what are the rights of the parties, and is not a breach of their duty as trustees. such breach would arise upon a failure to maintain the rights of their *cestui que trusts*, as they shall be ascertained and adjudged by the Court.

The remaining cause of demurrer, is that upon which rests the main controversy. It contests the claim set up by the bill that, in the partition, the lands conveyed by the testator to some of the devisees, be estimated in the partition directed by the will, and be held by the grantees as part of their respective shares. The complainants maintain this claim upon several distinct grounds. Among these, the ground taken by Judge Layton naturally presents itself first ; that is, that the will contemplates the partition

of the whole estate as it was then held, the intent of the testator being that each devisee take one-eighth of the lands then held, and not one-eighth of a part only of them. The answer is obvious. Under any circumstances, a will can operate only on such lands as the testator may hold at his decease. In this case the testator so expressly directed. Afterwards, by these conveyances, the legal effect of which he must be presumed to have understood, he withdrew part of his lands from under the devise, leaving it to apply only to the residue. Nothing beyond this residue, then, can be included in the partition by *force of the will*. If the lands taken out of the devise can be estimated in allotting to the grantees their shares of the remaining lands, it must be through some legal effect arising from the conveyances themselves. That they have such effect has been earnestly argued upon these grounds.

*First*, that taken by the bill which treats the conveyances as advancements. But an advancement, properly so called, though a thing known under certain ancient customs in England, is now a creature of the statute, and by the statute, is confined to intestate estates, and never applied to lands devised. Under the statute for the distribution of intestate estates in England (22 and 23 *Car. II.*) and in many of the States, a child of an intestate having, in the intestate's lifetime, received a portion, either in real or personal estate, shall be charged with it against the share of the estate, which, otherwise, he would have taken. He may keep the whole of the portion advanced, whether it be more or less than his distriburive share would have been, but he cannot claim anything in addition without bringing his portion into hotch-pot as was the homely English phrase, or collecting it, in the language of Civil law. 2 *Williams on Ex'rs.* (1285 &c.) Under our statute (*Rev. Code*, 279) only gifts of real estate by a parent are treated as advancements, and these only when the parent afterwards dies intestate. It is only in the partition

of the intestate real estate that the question of advance-
ment arises. The reason why the doctrine of advancement
is copied in our law, is obvious. The parents having left it
to the law to distribute his estate, the law, making for him
what Lord Raymond, in 2 *P. Wms.* 443, aptly calls a
"Parliamentary will," divides it upon the just principle
that, among those standing in the same relation to the
intestate, equality is equity. But where the parent has, by
will, disposed of his estate, the law does not interfere,
leaving him to be master of his own property and the
judge whether, under all the circumstances, an unequal
distribution may not be just and necessary. The strict
limitation of this doctrine of advancements to estates dis-
tributable *by the law*, may be traced in that feature of the
ancient custom of hotch pot, in force between daughters
taking by descent, which restricted the custom to lands de-
scending in fee simple, excluding from its operation estates
tail, for the reason as stated by *Blackstone*, (*2nd Vol.*, 191,)
that "lands descending in fee simple are distributed by the
"policy of the law,for the maintenance of all the daughters ;
"and if one  has a suffieient provision out of the same
"inheritance equal to the rest, it is not reasonable that
"she should have more ; but lands descending in tail
"are not distributed by the operation of the law, but
"by the designation of the giver *per formam doni ;* it
"matters not, therefore, how unequal this distinction may
"be." The same policy extends into the Statute of Distri-
butions of Car. II, in which were embodied this common
law as to coparceners, and the ancient local customs of
London and York, in the distribution of goods and chattels,
(2 *Williams on Exrs.* (1286), and both in England and
in the United States, the law of advancements has been
applied only in cases of intestacy. Never, where there is
a will, not even as held in many cases, though there may
be a surplus undisposed of by the will, is a gift in the tes-
tator's lifetime required to be brought into the distribution
of such surplus. The cases on this subject are, *Vachell vs.*

*Jeffereys, Prec. in Chanc.* 170; Sir William Grant, in *Walton vs. Walton,* 14 *Ves.* 323 ; 2 *Williams on Ex'rs.* (1287) ; *Hawley vs. James,* 5 *Paige* 450 ; *Arthur vs. Arthur,* 10 *Barb. S. C.* 24 ; *Thompson vs. Carmichael's Ex'rs.,* 3 *Sandf. Ch.* 120 ; *Christman vs. Seigfried,* 5 *Watts and S.* (*Pa.*) 400 ; *Newman vs. Wilbourne,* 1 *Hill's* (*S. C*). *Ch.* 10 ; *Newill's case, Browne* 311 ; *Brown vs. Brown,* 2 *Iredell's Eq.* 309 ; *Richmond vs. Vanhook,* 3 *Iredell's Eq.* 581 ; *Needles vs. Needles,* 7 *Ohio St.* 435.

The *Second* ground, for the complainants, was taken by Mr. Robinson, (whose clients, though defendants, were in interest with the complainants,) viz ; that the conveyances, though not within the Statute as advancements, might be held to operate as a satisfaction of the undivided interests devised to the grantees, as a part execution of the direction for partition, by analogy to the doctrine of ademption applied to legacies. The principle upon which this doctrine of ademption goes is, that the legacy bequeathed in the will, and the portion settled, afterwards, upon the legatee, are presumed to be for the same purpose, are, in fact, the same thing, the settlement being treated as the satisfaction of the legacy in advance. Now, in some cases a conveyance to a devisee after the making of a will would operate in like manner as the ademption of a legacy, that is, where the conveyance to the devisee is of *the same land* which was devised to him. By such a conveyance the testator executes his devise, precisely as the settlement of a portion on a legatee, is an ademption of the legacy. In the present case had the testator made, by the will, a partition of his lands, devising a specific parcel to each child, and had afterwards conveyed to some of the children the tracts devised to them in severalty, then the conveyances would have been a part execution of the will, and like the ademption of a legacy, by a subsequent settlement of *a portion on the legatee.* But here the conveyances cannot be legally held to be of

the same lands which were devised to the grantees. The will speaks from the death of the testator, and devises to the grantees a share of such lands as the testator *should die* seized of, *i. e.*, the remaining lands other than those conveyed. In no legal sense can a conveyance of specific tracts in severalty be deemed a satisfaction or execution of a devise of other lands, or of an undivided share of the remaining lands. Nor, to carry the question a little beyond the line of the argument, can the conveyances operate as a *revocation* of the devise to the grantees in whole or in part, because, under the Statute of Wills, (Sec. 10,) a will can be revoked only in the form therein prescribed, except in the case of implied revocation. Implied revocations arise only out of certain alterations of the estate devised, which are incompatible with the operation of the devise, or out of such a complete change in the relations of the testator as imposes new obligations, and necessarily implies a change of testamentary purpose, such as marriage and birth of issue after the will. *Cruise's Dig. Title Devise, chap. VI, secs.* 44, 45. The conveyance to a devisee of lands, other than those devised, or of an interest in lands different from that devised, has never been held an implied revocation of the devise. On the contrary, the devisee under such circumstances has been held entitled both under the devise and under the conveyance. *Clarke vs. Berkeley*, 2 *Vern.* 720 ; *Rider vs. Wager*, 2 *P. W'ms.* 328 ; *Davys vs. Boucher*. 3 *Yo. & Coll. Exch.* 397 ; *Arthur vs. Arthur*, 10 *Barb.* 20.

I can see no legal ground to hold that these conveyances operated either as a satisfaction or execution of the devise to the grantees, or as an implied revocation of the devise.

A *Third* ground for the complainants was that of Mr. Cullen. Going beyond those before taken, he argued, in substance, that these conveyances, though not strictly

by their own force operating as advancements, or as a satisfaction, or part execution of the will, yet that, in this case, being made by the testator, with the express intent that they should be so taken, ( so admitted by the demurrer,) and being made to volunteers, the lands should be held by the grantees for the purpose of their conveyance, to effect which purpose equity may imply a trust that these lands be estimated in the partition, and treated as satisfaction *pro tanto* of their shares of the whole estate as it stood at the date of the will.   This argument is even more persuasive than those before considered, because it proposes not only to effect equality among the children, but to do so by carrying out the intention of the testator in these very conveyances.   To such an object this court would be ready to lend its aid, but that a rule of law forbids.   It is this : Where the question concerns the effect of any instrument, a will, conveyance, or agreement of any kind, the effect to be given to it must be such, and only such, as arises from its terms, or from its legal operation on its face.   Any latent ambiguity in its terms may be explained by evidence shewing to what subject-matter the terms used were intended to apply, or if, through mistake or fraud, a provision intended to be inserted has been omitted, equity will reform the instrument, and execute it, as reformed.   But where the instrument embodies all the terms and provisions which were intended to be embraced in it, and those terms and provisions have, on their face, a clear meaning, then no extrinsic evidence of intention, nor even an admitted intention, can, in any way, vary or enlarge the legal operation of the instrument. This is a rule well settled, of great importance, and binding as well in equity as at law.   Now, as to its application. Upon these conveyances there appears no ambiguity to be explained ; there is no alleged omission of any condition intended to have been inserted, which, on the ground of mistake or fraud, equity can supply.   They are all the grantor intended them to be, *on their face*, and, on their

face, they are unqualified gifts of the lands conveyed. But the argument proposes, in effect, to engraft upon them a condition or trust, so as to oblige the grantees to bring them into the partition. This cannot be done without overturning fundamental principles.

The case was put, in argument, of a father conveying, in advance, to a son, his share of the estate, under an agreement by the son to take it in satisfaction. Such an agreement equity would enforce by obliging the son, at the father's decease to release any share of the remaining estate. What matters it, then, it was asked, whether such agreement be express or implied? Certainly it matters nothing. An agreement is of the same force, whether express or implied :—but the real question is, from what, in such a case as this, an agreement on the part of the grantees to hold the lands as an advancement, is to be implied? It might be implied from some acts on their part, which, in good faith and fair dealing, require that these lands be brought into the partition, as if these grantees had, by representing that the lands would be taken as advancements, induced the father to convey them, or to omit from the deeds any provision that the lands should be so taken, or had induced him to omit revoking, by a codical, these shares in the partition, in such case equity would imply an agreement or trust, but nothing can be implied against them, from their bare acceptance of a gift unqualified on its face, without, so far as the case shows, any knowledge of the grantor's expectations, or even any knowledge that he had made any will. We cannot, in such case, presume a renunciation by them of their rights under his will ; *non constat* that, if apprized of his will and purpose in the conveyances, they might have elected to hold their full shares under the will.

The case really presented is this. The testator and grantor either mistook the legal operation of these conveyances, or, through ignorance or inadvertence, omitted to make a codicil to his will. But for this there is no remedy.

Opinion :—mistake of law cannot be corrected.

Where a party makes just such an instrument as he intends to make, without fraud, surprise, or mistake in fact, an error as to the legal effect of the instrument cannot be corrected. Says Chancellor Kent, in *Lyon vs. Richmond,* 2 *Johns. Ch.* 60. "Every man is to be charged, at his peril, with a knowledge of the law. There is no other principle which is safe or practicable in the common intercourse of mankind." The principle has been fully discussed and applied in many cases. The leading cases are *Worrall vs. Jacob,* 3 *Meriv.* 195 ; *Ld. Irnham vs. Child,* 1 *Bro. C. C.* 92 ; *Hunt vs. Rousmaniere's, Adm'rs.* 1 *Peters S. C. R.* 1 ; 1 *Sto. Eq. Jur. sec.* 111 &c. See, also, especially, a late case in New York, *Arthur vs. Arthur,* 10 *Bard.* 120 very similar to the present one in its circumstances and in the questions raised.

In *Worrall vs. Jacob,* 3 *Mer.* 195, a party, having a power of appointment, executed it absolutely, without introducing a power of revocation, upon a mistake of law, that, being a voluntary deed, and remaining in her possession, it was revocable at pleasure. The Court denied any relief—"If"—says Judge Story, 1 *Sto. Eq. Jur. Sec.* 112, "the "power of revocation had been intended to be put into the "appointment, and omitted by a mistake in the draft, it "would have been a very different matter,"—a distinction which has already been put in this case.

After a full consideration of the whole subject, I am unable, though altogether disposed to do so, to bring the lands conveyed to the defendants, into the partition. This result disappoints the testator's expectation and works great inequality among his children, but this is a mischief far less than it would be to relax rules of law, settled upon great consideration for the protection of rights of property. Instances like this, of hardship, and even of injustice, are unavoidable. It is not possible, by any system of jurisprudence, to administer exact justice in every case. The best system is that which affords such rules as will secure

justice in the ordinary course of human transactions, and to such rules once settled, it is the duty of the Court, and the part of wisdom, to adhere.