MARIA NEWELL,

*vs.*

THE HARTMAN AND FEHRENBACH BREWING COMPANY.

*New Castle, July* 19, 1911.

Where a judgment was assigned as security for the debt of another, the assignee "with recourse" was not responsible for misrepresentations to the assignor by the principal debtor as to the legal effect of the assignment, so as to authorize its reformation for mistake.

Where it is not satisfactorily shown that the assignor of a judgment "with recourse" to herself did not intend to execute the particular instrument as it was, she cannot, in absence of fraud or misrepresentations by the assignee, have the instrument reformed, so as to make it read "without ourse," on the ground of mistake as to its legal effect.

The burden of showing mistake in an instrument, so as to authorize its reformation, is on the party asserting the mistake.

In order to reform an instrument for mistake, the mistake must be established by satisfactory evidence beyond a reasonable doubt.

The owner of a judgment against her son, after an interview with her son, assigned it as security for his indebtedness to the assignee, "with recourse" to herself; no one else being present at the interview, and the assignment being made immediately thereafter. *Held* that, in absence of a request for further delay, or for an opportunity to take advice as to the assignment other than that of her son, the fact that she assigned it immediately after the interview did not constitute surprise, so as to authorize the reformation of the assignment, on the ground that the assignor in her haste did not understand the legal effect of the quoted phrase.

INJUNCTION BILL. The bill is filed to restrain a suit at law. On October 5th, 1891, John M. Newell executed a bond to his mother, Maria Newell. the complainant, for $2000, he be'ng then indebted to her in that amount, and judgment was entered on the bond on the same day. On May 23rd, 1892, a *fi. fa.* execution was issued on the judgment and levy made on June 12th, 1892, on certain personal property of the defendant, consisting of saloon fixtures, furniture, etc., appraised at about $600. This writ was stayed by the plaintiff therein. About August 26th, 1893, John M. Newell, being then indebted to the Hartman & Fehrenbach Brewing Company to the amount of about $1200, requested from it a further loan of money. His request was denied without security being given for the past indebtedness and the requested increase thereof, and h's mother was offered as security and accepted. By arrangement with John M. Newell, Charles C. Kurtz, manager of the company, and Peter L. Cooper, Esq., its counsel (now deceased), went to the residence of Maria Newell on August 23rd, 1893. After an interview between John M. Newell and his mother, at which no one else was present, Mrs. Newell went with her son into the room with Mr. Kurtz and Mr. Cooper and signed a paper writing submitted to her. This paper was a direction to the Prothonotary, in consideration of $2 paid to her, to transfer to the Hartman & Fehrenbach Brewing Company the judgment against John M. Newell

"with recourse by them to the plaintiff in this judgment."
The said assignment is as follows:

"Wilmington, Delaware, August 26, 1893.
"Maria Newell v. John M. Newell.   No. 331, Sept. Term, A. D. 1891.
Real Debt, $2,000.00.

"For and in consideration of the sum of two dollars to me in hand paid by the Hartmann & Fehrenbach Brewing Company and for other good and valuable considerations, I hereby direct the Prothonotary of New Castle County, Delaware, to mark the above stated judgment and execution issued thereon to the use of the Hartman & Fehrenbach Brewing Company, with recourse by them to the plaintiff in this judgment.

"Maria Newell   [Seal.]"
"Attest: Charles C. Kurtz.
"August 26, 1893."

A loan of $150 was then made by the assignee to John M. Newell.   Later an *alias fi. fa.* was issued on the judgment to the November term, 1894, and a return of *nulla bona* made; and thereafter action of debt was brought by the Hartman & Fehrenbach Brewing Company on the bond against Maria Newell as assignor thereof and of the judgment entered thereon. The bill is filed to enjoin prosecution of the suit, because the assignment "with recourse" to her was a mistake and misrepresentation of the law, and because she did not intend or expect to make herself liable for the debt.

The case was heard on bill, answer, testimony and exhibits.

*John Biggs*, for the complainant.

The complainant was taken by surprise; she had not sufficient time to act with caution; undue advantage was taken of her situation, and, therefore, she should be protected by this Court.   *Evans v. Llewellyn*, 1 *Cox* 333.   The assignment was induced by a mixture of mistake, personal ignorance, surprise and want of professional advice, and the complainant is not bound by it.   *Lansdowne v. Lansdowne*, 1 *Mos.* 364; *Dunnage v. White*, 1 *Swans.* 137; *Evans v. Llewellyn*, 1 *Cox* 333.   The defendant, through its agent *ad hoc*, John M. Newell, having intentionally produced a false impression upon the mind of Maria Newell and obtained an undue advantage of her, is bound by the fraud committed on her, though the fraud was not

originally conceived by it, or actually perpetrated by it. *Fogg v. Griffin,* 2 *Allen* 1; *Fitzsimmons v. Joslin,* 21 *Vt.* 129. John M. Newell concealed the material fact that Maria Newell, by putting her name to the assignment, was binding herself for the payment of a sum of money, and she must be restored to her original rights. *Broderick v. Broderick,* 1 *P. Wms.* 239; *Gordon v. Gordon,* 3 *Swans.* 400.

*Benjamin Nields,* for the defendant.

The evidence has no tendency to show duress, or compulsion on the part of the defendant, or that the assignment was misread to her, or that the manager of, or attorney for, the defendant company knew of or participated in any influence exercised by her son, and if the son exercised any undue influence upon the complainant to secure the execution of the assignment, it could not effect the defendant company. *White v. Graves,* 107 *Mass.* 325. The burden rests upon the moving party to overcome the strong presumption arising from the terms of the instrument. *Howland v. Blake,* 97 *U. S.* 624. There is no more undeniably sound, wholesome and well founded rule of evidence in equity proceedings than, that written agreements will not be varied or reformed on the ground of mistake or fraud, except upon the most clear and positive proof that mistake or fraud in reducing them to writing was in fact committed. *Lake v. Meacham, et al.,* 13 *Wisc.* 396. If a party who can read will not read a deed put before him for execution, or, if being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection either in equity or at law. *Greenfield's Estate,* 2 *Harris (Pa.)* 489; *McDoal v. Yeomans,* 8 *Watts* 361; *Dougherty v. Scudder,* 2 *C. E. Green (N. J.)* 248.

THE CHANCELLOR: The testimony is conflicting as to what occurred when the assignment was executed by Maria Newell, and whether it was read to her and the legal consequences of it explained to her. John M. Newell, who had seen the draft of the proposed assignment, in one part of his testimony said that

at the private interview with his mother he then explained the whole matter to her; but also testified that in the private interview with his mother he explained to her that she was not liable, but was only turning over to the assignee the same security she had and no more, viz., the levy on the personal property. This representation was not made in the presence of the representatives of the assignee, or with their knowledge. It was urged by the complainant that John M. Newell was the agent of the assignee in securing the transfer, but this is not shown; but it appears rather that he was acting for himself, and trying to obtain some security on which he could obtain from the assignee a loan of money for himself. Security for the existing indebtedness from him to the assignee was only a secondary object in which he was not much interested, except as it was a means of obtaining a further and new loan for himself. The assignee is not responsible for the representation of John M. Newell. It is not clear, then, that the assignment was not read over to Mrs. Newell, in view of the conflict of testimony; but on the contrary the weight of evidence is that it was read to and explained to her before it was signed by her, though the character of the explanation made is not disclosed. The assignor could read and write and was not inexperienced in business, having been herself engaged in trade as a retail grocer. There is no allegation in the bill, or proof of any misrepresentation to Mrs. Newell by any agent or officer of the assignee. The theory of the bill was that the misrepresentations were made by John M. Newell as agent for the assignee, but as stated above, his agency is not shown, but is rather disproved. The theory of the bill fails.

But the question still remains as to an alleged mistake arising from the use of the technical words "with recourse" in the assignment; and absence of an opportunity to the assignor to reflect, or act with caution, so that she was surprised into an action injurious to herself. Upon the question of mistake, there is no satisfactory showing that the assignor did not in fact intend to make the assignment which she in fact signed, for it was that and no other instrument which she intended to execute when she in fact signed the transfer of the judgment.

Such being the case she cannot now obtain such action of the Court of Chancery as will practically so reform the instrument as to give it a different legal effect. In *Marshall v. Rench*, 3 *Del. Ch.* 239, 259, Chancellor Bates thus states the principle:

"Where a party makes just such an instrument as he intends to make, without fraud, surprise or mistake in fact, an error as to the legal effect of the instrument cannot be corrected."

This he fortifies with the following statement of Chancellor Kent in *Lyon v. Richmond*, 2 *Johns. Ch.* (*N. Y.*) 51, 60:

"Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind." See also 1 *Story's Equity Jurisprudence*, § 111.

The complainant having without fraud, or misrepresentation on the part of the assignee, or its agent, executed the assignment, cannot be granted a reformation of it because she did not understand the legal effect of the words of the assignment. The burden of showing the mistake is on the party to the instrument who asserts the error.

"In all such cases, if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract, so as to make it conformable to the precise intent of the parties; but, if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief; upon the ground that the written paper ought to be treated as a safe and correct expression of the intent, until the contrary is established beyond reasonable controversy." 1 *Story's Equity Jurisprudence*, § 152.

The cases cited by the complainant's solicitor are not helpful. In *Evans v. Llewelyn*, 1 *Cox Ch. Cas.* 333, a conveyance of property was set aside where the grantor was a person in low condition, not apprised of his rights and with no one to advise him. *Lansdowne v. Lansdowne*, 1 *Moseley* 364, has been much criticised and the facts are stated very meagerly. In *Dunnage v. White*, 1 *Swanst.* 137, there was a clear mistake of fact upon which was based a family agreement for the settlement of rights to family property. In the case under consideration there is no evidence of misrepresentation by the assignee of fact or of law; no facts tending to show fraud, or fraudulent

intent; no advantage taken of ignorance, extreme old age or inexperience; and no evidence of undue influence. The paper was unambiguous and had a clear legal meaning, though the language was technical. There was no request made by the assignor for delay for further consideration, information or advice. In this case the circumstances indicate that the assignor was made acquanited with the legal liability she was assuming by assigning the judgment "with recourse". Her agitation after the private interview with her son just prior to executing the instrument is inexplicable, unless she thought she was doing something more than assigning a judgment held by her against her son, the only security for the payment of which was, so far as appears of record, a levy made about a year before on certain personal property of small value and perishable in character, and of which judgment and levy she was ignorant when it was entered and made. Possibly she was agitated because of the liability she was assuming to the assignee of the judgment.

There was no surprise in any true sense, for in the absence of a request for delay, or for further consideration, or for an opportunity to take advice, other than that of her son, the celerity of action on her part to sign the transfer when presented does not, under the circumstances, constitute or show surprise. Assuming, however, that the assignment was not read over to Mrs. Newell before she signed it, still that fact does not give her a right to deny the legal effect of that which she did in fact sign.

"If the party that is to seal the deed can read himself and doth not, or being illiterate or blind, doth not require to hear the deed read, or the contents thereof declared, in these cases, albeit the deed is contrary to his mind, yet it is good and unavoidable." *Touchstone*, 56. See, also, *Greenfield's Estate*, 14 *Pa. St.* 489.

The conclusion, then, is that the complainant has not shown such a case of fraud or mistake as will overcome the presumptons of regularity arising from the voluntary execution of a legal transfer of property rights.

The bill will be dismissed and the costs taxed against the complainant.