121 A.2d 293 (1956)
Michael DEMETRIADES, Plaintiff,
v.
William KLEDARAS, Defendant.
Court of Chancery of Delaware, New Castle.
March 7, 1956.
H. Albert Young, Wilmington, for plaintiff.
Joseph A. L. Errigo, John E. Wilson and James P. D'Angelo, Wilmington, for defendant.
MARVEL, Vice Chancellor.
Plaintiff first seeks an order reforming a written agreement dated September 8, 1954 so as to make it conform to what plaintiff contends was the contract actually entered into by the parties. This contract according to plaintiff involved not only a written agreement for the purchase and sale of defendant's restaurant business but also an oral promise on defendant's part not to operate a competing diner within a radius of six or seven blocks of the business to be sold. In June, 1955, defendant[1] purchased property adjoining the diner sold to plaintiff on Second Street in Wilmington for the purpose of again engaging in the restaurant business. Accordingly plaintiff also seeks injunctive relief against violation of the alleged oral covenant not to compete. The written contract sought to be reformed provided for the outright sale of defendant's interest in a business known as the Five O'Clock Diner located on the southeast corner of Second and Shipley *294 Streets in Wilmington and did not contain a covenant on defendant's part not to compete. In return for transfer of defendant's interest in the diner including its equipment, merchandise and food stuffs, plaintiff agreed to pay defendant $6,000. The sale was consummated and plaintiff received a bill of sale transferring the business together with an assignment from defendant of the balance of the term of the lease under which he had operated the diner. Plaintiff also entered into a new lease with the owners of the property on which the diner is located for a term of five years commencing July 15, 1955.
The written contract sought to be reformed had its origins in a meeting between the parties held early in September, 1954. Plaintiff, a native of Greece, and who at the time was considering the purchase of a restaurant business, came to Wilmington and was introduced to the defendant. Because of ill health and a desire to visit California and perhaps Greece, defendant was anxious to sell his Five O'Clock Diner. Defendant did not own title to the land on which the diner was located but did hold a lease which had about ten months to run. He placed a value of $10,000 on the entire business. Plaintiff considered this price too high. Because an important part of the value of a restaurant business lies in the holding of its patronage plaintiff insisted that defendant agree that one of the terms of the sale should be a promise on defendant's part not to re-enter the restaurant business within a radius of six or seven blocks of the Five O'Clock Diner. Plaintiff contends that defendant made a covenant to such effect. Defendant denies such a promise although he concedes that he indicated that he was leaving Wilmington to visit California for reasons of health and would probably not return to Wilmington to compete against plaintiff in the restaurant business. Defendant not only convalesced in California but also visited Greece. Defendant contends, however, that he made it clear from the beginning of negotiations that he would not agree to a sale that had as one of its terms any hampering of his right to engage in the only business he knew, namely the restaurant business. Both plaintiff and defendant are better able to express themselves in Greek than in English and much of their discussion about the proposed transaction was carried on in the Greek language. I am satisfied, however, that both parties were aware of their basic rights during the negotiations and were conscious of the stakes involved in reaching an agreement.
In order to determine the feasibility of plaintiff's purchase of the business, the parties immediately called on the agent for the property, one Benjamin Wolfman, who was also the husband of one of the three owners of the land on which the Five O'Clock Diner is located. Matters such as defendant's reasons for selling his business, plaintiff's insistence on a covenant on defendant's part not to compete, the amount of the agreed purchase price as well as the terms of a new five year lease on the expiration of defendant's lease, were discussed with Mr. Wolfman. Plaintiff was deemed acceptable as a new tenant by Mr. Wolfman and monthly rentals over a five year term commencing July 15, 1955, the expiration date of defendant's lease, were apparently agreed upon.
Plaintiff was anxious to consummate the purchase and to enter into the new lease even though discussions had extended late into the evening. Mr. Wolfman attempted to locate an attorney in Wilmington but was unable to find one he knew and arranged an appointment with his wife's brother-in-law, Bernard Hoffman, an attorney who was spending the week-end at his home in Atlantic City. The parties accompanied by Mr. Wolfman proceeded to Atlantic City and met Mr. Hoffman, whose wife was also one of the owners of the Second Street area here involved. Mr. Hoffman expressed a willingness to reduce the parties' agreement to writing and to draw the necessary papers concerning the leasing of the premises but insisted that the contracting parties come to his office in Reading, Pennsylvania for the actual closing of the transaction.
*295 I am satisfied that as of the time of the trip to Atlantic City and prior to conferring there with Mr. Hoffman that the parties were in substantial agreement as to the sale itself and that plaintiff had in fact made a down payment of $1,000 on an agreed total purchase price of $6,000. While it is obvious that plaintiff vacillated between reliance on defendant's plan of leaving the Wilmington scene and insistence that he be legally protected from competition by defendant in the area immediately surrounding the business to be purchased, I conclude that defendant declined to agree not to compete and that plaintiff finally elected to enter into a contract which did not contain the covenant he wished inserted. What plaintiff feared unfortunately has come to pass. Defendant not only has re-entered the restaurant business but has purchased for such purpose from the same owners who own the site of the Five O'Clock Diner property immediately adjoining on Second Street.
The rules governing reformation of an instrument necessarily require clear and convincing proof that the writing fails to express the intent of the party or parties to the instrument sought to be reformed. Marshall v. Rench, 3 Del.Ch. 239,[2] Hob Tea Room v. Miller, Del., 89 A.2d 851; Budner v. Haas, Del.Ch., 98 A.2d 509. When an agreement is formally reduced to writing and stands unrescinded the contracting parties will be held to its terms unless through mutual mistake, stenographic negligence, or mistake of one party together with fraud, overreaching or inequitable conduct on the part of the other contracting party, the agreement fails to express the contract actually made, § 46, Reformation of Instruments, Vol. 45, American Jurisprudence p. 609, Wigmore on Evidence, Vol. 9, § 2425 et seq., Budner v. Haas, supra.
While Mr. Hoffman served two masters in reducing the parties' agreement to writing, he did not serve as advocate for either party and I find that he honestly though perhaps unwisely attempted to carry out the instructions given to him. Language difficulties had to be overcome, however, I am satisfied despite Mr. Hoffman's explainable lapse of memory in the affidavit stage of this proceeding that he made it clear to plaintiff that he had the right to decline to complete the proposed purchase in view of defendant's refusal to assent to a sale containing any condition which would hamper his future business activities. Mr. Hoffman read the proposed agreement and bill of sale in the presence of the parties and while he expressed the opinion that plaintiff's failure to complete the transaction would lead to a forfeiture of the down payment of $1,000, there is no evidence that fear of forfeiture of this amount was a motivating factor in plaintiff's decision. The agreement was thereupon[3] signed, plaintiff paid an additional $4,000 in cash and gave a note for the balance of $1,000.
That plaintiff understood the implications of the written agreement is made clear by what transpired within several weeks after the sale was consummated. Plaintiff's uneasiness over the possibility that defendant might continue in the restaurant business was communicated to Mr. Hoffman by Mr. Wolfman and the former wrote plaintiff on September 23, 1954, again stressing the fact that defendant had refused to sell under terms that would in any way limit his future activities in the restaurant field. To this letter plaintiff[4] replied expressing a willingness to let the *296 transaction "ride as is" and forwarding the $1,000 balance due on the purchase price.
In short the irresistible inference to be drawn from the facts is that plaintiff aware of what might happen elected to gamble on the chance that defendant would not re-enter the restaurant business and entered into a contract in writing which left defendant free to compete. He is bound by the terms of such contract. Compare Cunningham v. Esso Standard Oil Co., Del., 118 A.2d 611.
On notice, judgment will be entered for defendant.
NOTES
[1] This purchase also included the site of the Five O'Clock Diner subject, of course, to plaintiff's present lease.
[2] A subsidiary rule of reformation is that there be a "clear understanding" with which the formal contract conflicts. This point is not considered in view of the Court's findings.
[3] Without reference to mutual mistake or fraud it has been specifically held that a sale of a business duly reduced to writing may not be varied by evidence of an oral understanding that the seller will not re-engage in the same business. See note in American and English Annotated Cases, 1913c p. 1379 and Wigmore on Evidence, supra.
[4] Plaintiff's reply letter was clearly admissible, § 956, Evidence, Vol. 20, American Jurisprudence.