129 A.2d 407 (1957)
NORTH AMERICAN URANIUM and OIL CORP., a Delaware Corporation, Plaintiff,
v.
SOUTH TEXAS OIL and GAS COMPANY, a Delaware Corporation, Defendant.
Court of Chancery of Delaware, New Castle.
February 8, 1957.
Alexander L. Nichols (of Morris, Steel, Nichols & Arsht), Wilmington, and James L. Purcell (of Crisona Brothers), New York City, for plaintiff.
Clarence W. Taylor (of Hastings, Lynch & Taylor), Wilmington, and Charles G. Lyman, Corpus Christi, Tex., for defendant.
MARVEL, Vice Chancellor.
Plaintiff is the registered holder of 750,000 shares of common stock of the defendant corporation and seeks a statutory[1] review of the validity of the election of defendant's board of directors at the annual meeting of stockholders of the corporation held on July 20, 1956. Plaintiff, who claims to be the beneficial as well as the record holder of 750,000 shares of defendant's stock, sets forth allegations in its complaint charging irregularities in the holding of such election. The complaint as originally drawn prayed for an order directing a new election and granting leave to plaintiff to inspect and copy defendant's stock ledger prior to such election.
Defendant admits plaintiff's record ownership of 750,000 shares of South Texas stock but denies that plaintiff is the beneficial owner of such stock, alleging in its answer that when plaintiff acquired stock in defendant pursuant to certain arrangements made between the parties in September 1955, it was agreed that plaintiff would distribute such stock to its stockholders "* * * within a reasonable time * *"[2] after the expiration of sixty days from the consummation of the transaction between the parties on October 17, 1955, and that "* * * plaintiff is not entitled to assert the status or right of a stockholder as such * * *", and accordingly not entitled to the relief prayed for in the complaint.
By amendment to its complaint plaintiff thereafter sought additional relief in the *408 form of a declaratory judgment to the effect that plaintiff has a proper standing to maintain this action as the beneficial as well as the record holder of defendant's stock. Defendant thereupon amended its answer so as to plead certain portions of its answer affirmatively and added a prayer for an order specifically directing plaintiff to distribute its South Texas Oil and Gas Company stock to plaintiff's stockholders pursuant to its alleged agreement with defendant and commitments made to its own stockholders. Defendant also prayed for injunctive relief against plaintiff exercising any rights as an alleged holder of such stock. The issue thus raised has been separately tried. Other allegations in the pleadings need not be considered pending decision on plaintiff's standing to bring this action.
§ 225 of Title 8 Del.C. provides that upon the application of any stockholder the Court of Chancery may hear and determine the validity of any election of any corporate director or officer and grants statutory authority to this Court to order an election in the event it should be determined that no valid election has been held. § 227 of Title 8 Del.C. provides that in any proceeding instituted under §§ 224-226 of Title 8 the Court of Chancery may determine "* * * the right and power of persons claiming to own stock * * * to vote at any meeting of the stockholders * * *."
While both plaintiff and defendant have prayed for a decree establishing actual ownership of the 750,000 South Texas shares registered in plaintiff's name, I have entertained doubts as to whether such a ruling can be made in the absence as parties of persons who are alleged to be the equitable owners of such stock. As stated above, the defense to the issue separately tried in this action (which defendant sought diligently to establish by parol evidence) is that the parties to this action reached an agreement in connection with plaintiff's purchase of stock in defendant to the effect that plaintiff's own stockholders shortly thereafter would receive such stock. It is further contended by the present defendant that such understanding was made known to some extent to plaintiff's stockholders prior to the meeting which approved the sale of plaintiff's assets in return for 750,000 shares of defendant's stock and that plaintiff's stockholders have been and are insisting that plaintiff live up to such commitment.
The issue thus raised, namely that of stock ownership, has been held not properly before this Court in a § 225 proceeding when a claimant to such stock is not a party, Standard Scale & Supply Corp. v. Chappel, 16 Del.Ch. 331, 141 A. 191, Rosenfield v. Standard Electric Equipment Corp., 32 Del.Ch. 238, 83 A.2d 843.
Turning to the requirements of § 225 of Title 8 Del.C. and the question of whether or not plaintiff meets such requirements, it is conceded that plaintiff was the registered holder of 750,000 shares of defendant's stock prior to the July 20, 1956 meeting of defendant's stockholders. See § 183 and § 220 of Title 8 Del.C. Furthermore, no evidence concerning the conduct of the disputed meeting having been introduced to date, there is nothing before me which casts any cloud on plaintiff's technical right to bring review proceedings. Finally, while I have no doubt concerning my statutory authority to resolve conflicting stock claims for the purpose of determining the duly elected directors of the corporate defendant, even though certain stock claimants may not be parties, the question remains as to whether or not the issue of ownership of stock registered in plaintiff's name can be determined in the absence of persons who, according to defendant, are its equitable owners.
The question of possible failure to join indispensable parties having been raised by the Court after trial, counsel for plaintiff has countered that its complaint, as amended, independently seeks a declaratory *409 judgment to the effect that it is the beneficial owner of 750,000 shares of defendant's stock and that defendant by counterclaim has joined issue, its counterclaim having prayed for an order directing plaintiff to distribute its South Texas Oil and Gas Company stock to plaintiff's own stockholders. Plaintiff contends that the issue of ownership is thus clearly before the Court and defendant agrees, however, for the reasons herein stated, adjudication of this issue necessarily must be confined to a determination of the rights and obligations of the present litigants.
Having come to the conclusion that I am concerned at this stage solely with contractual arrangements made by the present parties and not with the rights, if any, of plaintiff's stockholders, I find that plaintiff is under no contractual obligation[3] to defendant to bring about distribution of its South Texas Gas and Oil Company stock.
This finding is based on my conclusion that the documents introduced into evidence by plaintiff constitute the entire contract between the parties, as of September 29, 1955, and that such contract was not modified at a later date. Turning to such documents and to defendant's principal argument based on the documents themselves, it is my opinion that plaintiff's undertaking not to distribute defendant's stock for a period of sixty days after consummation of the transaction here involved does not carry with it, as defendant urges, an implied agreement to cause distribution after the expiration of sixty days. In my opinion, defendant, having transferred a fourth of its authorized stock in exchange for plaintiff's assets under the terms of an agreement in writing, later came to the conclusion that it would prefer to have such a large block of stock distributed among plaintiff's three thousand odd stockholders rather than held by plaintiff. I believe the facts before me bear out this finding and that defendant was not unduly limited in its effort to prove the contrary.
The proposed sale of assets by plaintiff was conditioned on approval[4] by a majority of its stockholders and in a proxy statement, which is in evidence calling a meeting for October 14, 1955, the stockholders were not asked to vote either on dissolution of their corporation or on a proposal to distribute South Texas stock as a liquidating dividend. In fact, the proxy statement indicated that plaintiff's management proposed to retain defendant's stock. It is indicative of what I believe was the actual agreement between the parties, namely one of purchase and sale of cash assets and speculative uranium interests for stock, that defendant did not agree to assume all of plaintiff's liabilities. It is inconceivable to me that plaintiff would have agreed to the proposition sought to be established by defendant (one necessarily contemplating dissolution or its equivalent) in the absence of an undertaking by the purchaser to assume all of plaintiff's liabilities.
While the documents of purchase and sale were worked out by the parties' officers and attorneys under some pressure during a period of a week to ten days prior to September 29, 1955, they set forth a clear and unambiguous contract containing no covenant requiring plaintiff to distribute its stock in defendant. I cannot accept defendant's contention that an undertaking as vital and important as the one sought to be established by defendant was agreed to by the contracting parties and not reduced to writing in light of the fact that details as to defendant's assumption of certain small liabilities were *410 itemized in the actual document of purchase and sale and other minutiae, such as the date of defendant's taking over of an obligation for rent for the use of premises in Denver, Colorado, are carefully spelled out in a memorandum of October 17, 1955 confirming arrangements made in connection with consummation of the purchase and sale.
It was for these reasons that I applied the parol evidence rule so as to limit drastically plaintiff's attempt during the trial to establish a collateral agreement as to distribution, a subsequent agreement[5] to such effect, and to explain so-called ambiguous terms in the written agreements allegedly requiring oral explanation.
The main thrust of defendant's argument that parol evidence should have been freely admitted at trial to explain the parties' intent, is based on a statement in the so-called letter of inducement, dated September 29, 1955, addressed to defendant by Ivan Israel, a holder of 90,000 shares of plaintiff's stock, and James J. Crisona, a holder of 128,000 such shares. Without passing on the authority of these persons to bind the corporation to make the distribution sought by defendant, the document in question clearly makes no commitment on plaintiff's behalf. It constitutes an undertaking by two of plaintiff's substantial stockholders to vote for the sale of plaintiff's assets to defendant and a further agreement by such stockholders to vote as directed by defendant's president "* * * If and when the shares of South Texas Oil and Gas Co. are distributed to the stockholders of North American". A third covenant in the letter provided for an escrow of Israel's and Crisona's shares for a period of a year thus assuring defendant that such persons in the interim would not sell out to third parties. In the light of these reasonable undertakings, which appear to have been designed to insure support to defendant's management for a limited period from two of plaintiff's principal stockholders, I fail to find any significance in the language of the preamble to the actual undertaking which states:
"In order to induce you to enter into an agreement to purchase all of the assets of North American Uranium and Oil Corp. (hereinafter called "North American") for 750,000 shares of your Common Stock, which stock will ultimately be distributed to the stockholders of North American, we, the undersigned, hereby warrant and represent as follows:" (emphasis supplied).
I am satisfied that defendant at the time of the entering into of the transaction here involved was concerned primarily with its desire to obtain plaintiff's assets, including cash in the amount of $430,000,[6] in exchange for stock and that this was the contract which the parties made. They did not contract as to how or when plaintiff would dispose of its South Texas stock in futuro except to agree that such distribution was not to be made by plaintiff until after the expiration of sixty days from consummation of the purchase and sale. Defendant's efforts at trial were in effect an attempt to redraft an unambiguous contractual arrangement.
Defendant has expressly disclaimed any purpose of seeking rescission of its purchase of plaintiff's assets, and I decline on the basis of parol evidence to reform a complete contract entered into after careful negotiations. Compare Demetriades v. Kledaras, Del. Ch., 121 A.2d 293.
On notice an order will be entered declaring that plaintiff has a proper standing to *411 maintain this action and is under no contractual obligation to defendant to undertake distribution of 750,000 shares of stock of defendant acquired by plaintiff on or about October 17, 1955 and registered in plaintiff's name.
NOTES
[1] § 225, Title 8, Del.C.
[2] Later in the answer this time is fixed as "* * * the latter part of December, 1955, or not later than January, 1956; * * *."
[3] Because of the conclusions reached in this opinion it is unnecessary to decide whether or not the agreement which defendant seeks to establish is subject to specific performance. Compare Equitable Trust Company v. Gallagher, Del., 102 A.2d 538, and cases therein cited.
[4] See § 271, Title 8 Del.C. The necessary majority vote was obtained.
[5] When questioned as to whether or not a new agreement to distribute was reached after September 29, 1955, defendant's president testified that "* * * it was the same agreement."
[6] $100,000 of the amount was advanced on pledge on the date of the agreement.